UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

Ronald Clark,  
Petitioner

CIVIL ACTION No.

v.

Lois Russo,  
Superintendent

05　10148 DPW

Thomas F. Reilly,  
Massachusetts Attorney General

MEMORANDUM OF LAW IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254

INTRODUCTION

Petitioner Ronald Clark, pursuant to 28 U.S.C. §2254, petitions this Honorable Court for a writ of habeas corpus. The petitioner states that the writ should issue because:

The petitioner was deprived of his rights to due process and to a jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution where the Massachusetts Appeals Court unreasonably applied the law to the facts in holding that no harmful error arose from the petitioner's absence during the reading and answering of a jury question on the elements of home invasion and that there was no error in the judge's response, which failed to unambiguously inform the jury that it could not instruct on the facts.

1

## PROCEDURAL HISTORY

On October 25, 2001, petitioner Ronald Clark was convicted of armed home invasion, M.G.L. C.265, §18C, rape, M.G.L. C.265, §22(b), and assault by means of a dangerous weapon, G.L. C.265, §15B(b), following a jury trial in the Massachusetts Superior Court for Suffolk County (Tr. 4:20).[1] The petitioner was sentenced on October 26, 2001 to twenty years to twenty years and a day on the home invasion conviction, fifteen to twenty years on the rape conviction, to run concurrent with the home invasion sentence, and three years probation on the conviction for assault by means of a dangerous weapon conviction (Tr. 5:9-10.).

His convictions were affirmed by the Massachusetts Appeals Court on March 1, 2004, in an unpublished opinion pursuant to Massachusetts Appeals Court Rule 1:28. Commonwealth v. Clark, 60 Mass. App. Ct. 1119 (2004) (A. 1). The petitioner filed a timely application for further appellate review in the Massachusetts Supreme Judicial Court. The Supreme Judicial Court denied further appellate review by an order dated May 3, 2004. With the filing of his application for further appellate review, the petitioner exhausted all remedies available to him through the courts of the Commonwealth. This petition followed.

## STATEMENT OF FACT

This case arises from a complaint alleging that on February 3, 2000, the petitioner invaded the complainant's home in Roxbury armed with a knife, assaulted her with the knife, and raped her (Tr. 1:67).

---

[1] References are to the transcript, by volume and page (Tr. : ), and to the appendices to this memorandum (A. )

2

**The Evidence**

The complainant, Jane[2], testified as follows: She and the petitioner lived together between early 1999 and January 2000 (Tr. 1:23-125, 130-133). On February 3, 2000, the petitioner entered Jane's apartment after she had gone to bed, entered Jane's kitchen where he tore a phone from the wall, and then raped Jane in her bedroom (Tr. 1:135-169).

Jane also testified that, after the petitioner entered the bedroom from the kitchen, the petitioner pulled a knife from behind his back and pointed it at her face (Tr. 1:150-151). Carrying a weapon at the time of entering a dwelling is an essential element of armed home invasion under Massachusetts General Law C.265, §18C. Commonwealth v. Ruiz, 426 Mass. 391, 392-394 (1998). On direct examination, Jane was asked where she first saw the knife and "where it came from." She responded, "When I first saw it in my room, he had it in his back; and he pulled it out." (Tr. 1:150). She did not provide any testimony permitting a finding, inferentially or otherwise, that the petitioner had the knife when he entered the apartment and had not obtained it in the kitchen before entering the bedroom. A Boston detective, Paul Walsh, testified on direct that the knife "was not from [Jane's] apartment." On cross-examination, he testified that he knew this "because I asked her." (Tr. 3:20, 26).

---

[2] A pseudonym.

3

**Jury Questions**

During its deliberations, the jury sent the court the following question:

*Re: Home Invasion*
<u>Question</u>
*beyond a reasonable doubt: was the defendant armed with a dangerous weapon <u>at</u> <u>the</u> <u>time</u> <u>of</u> <u>entry</u>?*
1. *Where was the roast beef dinner held?* [3] *(ms Jane's testimony)*

The judge, despite the prosecutor's objection that "it looks like they're just, flat out, asking you the question," (Tr. 4:17-18), responded in writing,

1. *Yes The Commonwealth must prove beyond a reasonable doubt that the defendant was armed with a dangerous weapon at the time he entered the Apt.*
2. *Resolving issues regarding the testimony is exclusively your responsibility.*
(Tr. 4:19; A..2)

Defense counsel did not object to the judge's answer. The prosecutor tried unsuccessfully to convince the trial judge to say only that "these are factual questions that are up to them":

Mr. Bradl [the prosecutor]: Can I just take a look, Judge? I'm just curious about –

The Court: You're just curious about what?

Mr. Bradl: Anything about their writing.

The Court: Why? Do you think you're going to discern something from the way they wrote it?

Mr. Bradl: I don't know. You never know, you know?

The Court: You're a handwriting expert now?

---

[3] Jane had testified that Clark and his sister came by Jane's apartment to join in a roast beef dinner on the Sunday preceding February 3rd, but that Jane turned them away (Tr. 2:48).

4

Mr. Bradl: You never know.

The Court: You'd better go to Washington. They might need you down there.

Mr. Bradl: Judge, it looks like – on Question 1, was the defendant armed with a dangerous weapon at the time of entry. It looks like they're just, flat out, asking you the question.

The Court: Well, I can't answer that.

Mr. Bradl: Right. So, rather than –

The Court: No. Beyond a reasonable doubt was he.

Mr. Bradl: Right. How about just saying to them, you know, these are factual questions that are up to them. That's what they're here for.

The Court: I'm not going to say it that way. The Commonwealth must prove beyond a reasonable doubt that the defendant was armed with a dangerous weapon at the time he entered the apartment. ...

(Tr. 4:17-18).

The petitioner was absent from the courtroom when the note was received, during its reading, and while the judge's response was framed. It is clear from the record that the petitioner did not know about the question and did not waive his right to be present. Defense counsel declined the trial court's offer to bring the petitioner down. Counsel had no opportunity during the brief proceeding to ascertain whether the petitioner wished to be present. (Tr. 4:16-17). The petitioner had not waived his right to be present at side bar during jury selection (Tr. 1:13).

**Appellate Issues**

On appeal, the petitioner raised the following errors: that the handling of the jury question in the petitioner's absence violated his right to be present during all critical stages of trial; that the trial judge's response to the jury question violated the petitioner's right to a jury trial by creating a risk that the jury would understand the answer as an instruction that the defendant entered the apartment armed with a knife; that the fact that proof of an essential element of home invasion rested on unreliable hearsay created a substantial risk of a miscarriage of justice; and that the admission of self-corroborating fresh complaint evidence and improper bad acts evidence prejudiced the petitioner. (A. 3).

With respect the first and second issues, the Massachusetts Appeals Court held (1) that, although the petitioner had a right to be present for the reading and answering of the jury question, "... the defendant was not prejudiced by the judge's failure [to inform the defendant of the jury's question]" and (2) that "The defendant's presence would not have resulted in any different outcome in the circumstances of this case." (A. 1). The Appeals Court also held that "[t]here was no error in the content of the supplemental instruction" in the judge's answer to the first questions (A. 1).

## ARGUMENT

Under 28 U.S.C. §2254(d)(1), a district court may issue a writ of habeas corpus to a state prisoner when a state court's adjudication on the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States. A writ may issue where a state court correctly identifies the governing legal principle, but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362 (2000).

In the present case, the state court correctly identified the governing legal principle: that a petitioner has a right to be present at all critical states of a trial, and that this right cannot be waived by counsel without the petitioner's consent. It applied the law to the facts in an unreasonable manner in holding that the petitioner was not prejudiced and that "[t]he defendant's presence would not have resulted in any different outcome ..." (A. 1).

A defendant's right to be present at all critical stages of trial is a basic right that cannot be waived without the defendant's informed, publicly acknowledged consent. Taylor v. Illinois, 484 U.S. 400, 417-418 (1987); Illinois v. Allen, 397 U.S. 337 (1970). The record nowhere allows a finding that the petitioner waived his right to be present at any stage of trial. He declined to waive his right to be present at side bar during jury selection (Tr. 1:13).

A defendant's constitutional right to be present at all critical stages of the proceedings is derived from the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution as well as from the confrontation guarantees of the Sixth Amendment. United States v. Gagnon, 470 U.S. 522, 526 (1985). Because the right includes this due process component, its application is not restricted to the examination of witnesses. A defendant has a due process right to be present "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge ... [T]he presence of a

defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" Gagnon, *supra*, *quoting* Snyder v. Massachusetts, 291 U.S. 97 (1934). The right to be present extends to a particular proceeding if a defendant's exclusion would interfere with his ability to test the evidence against him or would otherwise deprive him of an opportunity to defend himself at trial. Kentucky v. Stincer, 482 U.S 730 (1987).

Here, the jury's questions and the judge's answers were legally significant because they required the judge to exercise discretion regarding what information the question sought, whether it could be answered, and how to respond. The judge treated the first question, though factual, as a question about the burden of proof and responded by re-instructing (albeit in a very confusing form) on the burden of proof. His response, as such, was an instruction to the jury on the law. Jury instructions are undoubtedly a critical stage of trial.

In the present case, it cannot be said that the judge could not have handled the matter differently than he did and that therefore the petitioner's absence was unimportant. *See*, Gagnon *supra* at 527. The answer framed by the judge to the jury's first question was at best confusing, and at worst could have been construed as an adverse instruction on an essential element. Because the most straightforward reading of the jury's question is that it is a factual inquiry as to whether the petitioner was armed, the jury may have understood the response – "Yes The Commonwealth must prove beyond a reasonable doubt that the petitioner was armed with a dangerous weapon at the time he entered the Apt." (Tr. 4:19) – as a factual instruction that the petitioner had a knife when he entered

8

Jane's apartment. If the jury had meant to pose a factual question, it would have little reason to understand that the judge's response was not a factual answer.

It is true that the response, as a factual statement, is awkward and that the answers to the first and second question are inconsistent. But as the jury did not ask about the burden of proof, it had no reason to understand that the judge intended his answer as a reinstruction on the burden of proof. It is more likely that the jury would understand the judge's answer as a response to the factual question it had posed. A response amounting to a factual instruction on an essential element of home invasion would violate the petitioner's right under the Sixth Amendment to a jury trial and his right to due process of law. The petitioner's absence cannot be said to be harmless where a grave error occurred during the time he was not in the courtroom.

The petitioner's absence affected his opportunity to fully defend against the charges against him. Gagnon, *supra*. While the court framed an instruction that was potentially devastating to the petitioner, defense counsel sat by in silence. Had the petitioner been present, he might have intervened or spurred his attorney to defend him more aggressively. *Compare*, Gagnon, *supra* (absence during discussion with juror deemed harmless where "respondents could have done nothing ... nor would they have gained anything ..."). In contrast to Kentucky v. Stincer, in which the petitioner's absence from an in-chambers competency hearing was deemed harmless because the witnesses were later cross-examined in open court, the petitioner in the present case had no opportunity to review or rectify the actions that took place in his absence. *Id.* at 730-731.

The petitioner's absence may have affected the outcome of the trial. The issue addressed by the jury's first question – whether the petitioner was armed when he entered Jane's apartment – was a live issue at trial and on appeal. The only evidence permitting a finding of armed entry was a detective's improper hearsay testimony that Jane had told him that the knife used in the assault was not hers (Tr. 3:20, 26). On appeal, the petitioner argued that a substantial risk of a miscarriage of justice arose from the fact that the only proof of an essential element of armed home invasion was improper and unreliable hearsay evidence. The jury's first question demonstrates that it was unable to resolve the factual issue. The confusing answer provided by the trial judge may have caused the jury to return a guilty verdict on the home invasion charge. If, by being present, the petitioner had had an opportunity to prevent the jury from receiving a defective instruction, the outcome of the trial might have been different.

## CONCLUSION

For the foregoing reasons, this Honorable Court should grant the petition for writ of habeas corpus.

Respectfully submitted,

Ronald Clark,
By his attorney,
Stella Robinson
BBO No. 543718
405 Waltham Street, No. 179
Lexington, MA 02421
781.862.7497

dated: January 19, 2005

# APPENDICES

1. Rule 1:28 decision in *Commonwealth v. Ronald Clark*

2. Exhibit F: Jury question

3. Defendant's Brief on Appeal to the Massachusetts Appeals Court