UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                            )
RONALD CLARK,               )
                            )
      Petitioner,           )
                            )
v.                          )      Civil Action No. 05-10148-DPW
                            )
LOIS RUSSO,                 )
                            )
      Respondent.           )
_____)

**MEMORANDUM IN OPPOSITION TO**
**PETITION FOR WRIT OF HABEAS CORPUS**

The respondent, Lois Russo, through counsel, hereby submits her memorandum of law in opposition to the petition for a writ of habeas corpus filed by Ronald Clark ("the petitioner"). As argued in this memorandum, the petition should be denied where the petitioner's claim is in procedural default, and in the alternative, where the petitioner cannot demonstrate that state court's adjudication of the claims was an unreasonable application of clearly established Supreme Court law, or that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**PRIOR PROCEEDINGS**

On March 30, 2000, a Suffolk County grand jury indicted the petitioner for 1) home invasion with a dangerous weapon, 2) assault by means of a dangerous weapon, and 3) rape

(S.A. 1).[1]  From October 22 to October 25, 2001, Judge Charles T. Spurlock presided over the petitioner's jury trial (S.A. 1).  The jury sent two questions to the judge during their deliberations (S.A. 2: R. 14).  After consulting counsel, the judge issued supplemental instructions (S.A. 2: R. 14).  The jury found the petitioner guilty on all charges (S.A. 1).

On October 26, 2001, Judge Spurlock sentenced the petitioner to twenty years to twenty years and one day on the home invasion conviction, and a fifteen to twenty year sentence on the rape conviction, to run concurrently with the home invasion sentence (S.A. 1).  He also sentenced the petitioner to three years of straight probation on the assault with a dangerous weapon conviction (S.A. 1).

On appeal the petitioner raised three claims: 1) the trial judge improperly responded to a jury question without the petitioner present; 2) a substantial risk of a miscarriage of justice occurred where the only evidence that the petitioner was armed at the time of the home invasion consisted of unreliable and improper hearsay; and 3) the trial judge improperly admitted fresh complaint evidence, self-corroborating testimony by the complainant and highly prejudicial prior bad acts evidence.  The Massachusetts Appeals Court affirmed the convictions on March 1, 2004.  *Commonwealth v. Clark*, 60 Mass. App. Ct. 1119, 804 N.E.2d 961 (2004) (S.A. 4).

In his application for further appellate review, the petitioner raised three claims: 1) the Appeals Court's holding that the judge's supplemental instruction in response to the

---

[1] The respondent's supplemental answer will be referred to as (S.A. --).

jury's question was not error failed to address the very significant risk that the jury would have understood the response as an instruction that an essential element of home invasion had been proven; 2) the Appeals Court's holding that the petitioner's absence during the reading and answering of the jury's question was harmless error misapplied relevant case law; and 3) the Appeals Court applied the wrong standard of proof applicable in cases in which inadmissible evidence provides the sole proof of an essential element (S.A. 5). The Supreme Judicial Court denied further appellate review on May 3, 2004. *Commonwealth v. Clark*, 441 Mass. 1107, 807 N.E.2d 830 (2004) (S.A. 6).

The petitioner filed the instant habeas petition on January 25, 2005. The respondent filed an answer and supplemental answer on March 3, 2005.

### STATEMENT OF FACTS

The following recitation of the evidence is taken from the Commonwealth's briefs to the Appeals Court and the trial transcripts:

The charges arose from an incident that occurred after the petitioner's relationship with the victim had ended. After meeting the victim at a homeless shelter, the petitioner moved into the victim's apartment in the summer of 1999 (Tr. I/120, 124). The relationship deteriorated and the victim asked the petitioner to move out following Christmas, 1999 (Tr. I/131). The petitioner continued to call the victim and stop by her apartment every day (Tr. I/132-133).

On February 3, 2000, the petitioner telephoned the victim about a spare key to the

victim's apartment (Tr. I/139). She told him that she wanted the key back and the petitioner told her that she would have to meet with him to get it back (Tr. I/135). The victim refused and told the petitioner that she would call the police and they would get her keys back (Tr. I/139).

Later that night after the victim had gone to bed with her two year old son, she heard her apartment door open and shut (Tr. I/140, 143-144). The petitioner entered her bedroom and told her to wake up (Tr. I/144). He began touching her on the buttocks and then inserted his fingers into her vagina (Tr. I/144-145). The victim told the petitioner to get out or she would call the police, but he refused (Tr. I/146-147).

Eventually, the petitioner ordered the victim to get up and go to the kitchen (Tr. I/149). The victim refused and again threatened to call the police, which enraged the petitioner (Tr. I/149-150). He pulled a knife out from behind him, pointed it at her face and told her that if she did not go to the kitchen he would kill her in front of her son (Tr. I/150-151). He then grabbed her by the hair and pulled her off the bed (Tr. I/152). As he shoved her into the kitchen, he told her that before he left, he would kill her, her son and himself (Tr. II/6).

When they got to the kitchen, the petitioner shoved the victim against the wall and started choking her (Tr. II/6). She blacked out for a few seconds (Tr. II/ 6). As the petitioner raised his fists at the victim, her son entered the kitchen and asked whether she was okay (Tr. I/157-158). The child began to scream, and the petitioner put the knife down on the kitchen

table, picked him up and brought him to his room (Tr. I/158).

When the petitioner returned to the kitchen, the victim attempted to calm him down because she was in fear for her and her son's life (Tr. II/7-8). As the petitioner calmed down, the victim took the knife from the kitchen table and placed it between two cereal boxes on top of the refrigerator, where the petitioner could not reach it (Tr. II/9).

The petitioner told the victim to prove to him that she was not sleeping with another man, which she understood meant that he wanted her to have sex with him (Tr. I/166). She decided that she would do whatever he wanted so that she and her son could live (Tr. I/165).[2] After the petitioner took her clothes off, they took a shower together and the victim lay down on her bed (Tr. I/167-168). The petitioner inserted his tongue into her vagina, then penetrated her vagina with his penis (Tr. I/168; II/10).

The petitioner spent the night at the victim's apartment, getting up frequently to try to get the knife from the top of the refrigerator (Tr. II/11). The victim thought he was going to kill her and her son every time he got up (Tr. II/11). The petitioner left the apartment at 5:00 a.m.; the victim fell asleep and woke up around 7:00 a.m. (Tr. II/12). The victim went to her best friend's apartment in the same building and told her what had happened (Tr. II/19). The victim was later transported to Boston Medical Center where bruises on her neck, back and a scratch on her leg were noted (Tr. II/23).

---

[2] Earlier in their relationship, the petitioner had told the victim that he had killed a man in California as part of his initiation into the Hell's Angels motorcycle gang (Tr. I/162-163).

# ARGUMENT

**Standard of Review**

Since Clark's petition was filed after the effective date of AEDPA, this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In relevant part, AEDPA precludes a federal court from granting habeas relief unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 400 (*quoting* 28 U.S.C. § 2254(d)(1)). The petitioner agrees that the Appeals Court correctly identified the governing legal principle, but that it unreasonably applied the law to the facts by holding that the petitioner was not prejudiced by not being present when the jury question was read and answered (Pet. Br. at 7).

**The "Unreasonable Application" Prong.**

A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams,* 529 U.S. at 413. In making this determination, a habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable."

*Id.* at 409.

There is no bright line rule as to what constitutes an "objectively unreasonable" application of established Supreme Court precedent. *Id.* at 410. As the *Williams* decision makes clear, however, an unreasonable state-court determination is not the equivalent of an incorrect one. *Id.*

> Indeed, because Congress used the word "unreasonable"... and not words like "erroneous" or "incorrect," a federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application [or determination] must also be unreasonable."

*Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.) (*quoting Williams*, 529 U.S. at 411), *cert. denied*, 534 U.S. 925 (2001). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001) (under AEDPA's "broad objective standard, a federal court cannot grant habeas relief simply because it disagrees with or finds error in the state court's application of federal law"), *cert. denied*, 535 U.S. 960 (2002). The First Circuit recently has noted that the question of unreasonableness involves "'some increment of incorrectness beyond error'... The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002), quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Where, for instance, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied.

*McCambridge*, 303 F.3d at 37, *citing O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied*, 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.), *cert. denied*, 534 U.S. 925 (2001).

I. **WHERE THE PETITIONER FAILED TO OBJECT TO NOT BEING PRESENT DURING THE READING OF THE JURY QUESTION AND THE JUDGE'S ANSWER, HABEAS REVIEW IS PRECLUDED BY PROCEDURAL DEFAULT.**

The "procedural default rule" reflects the Supreme Court's view that, in the interests of comity and federalism, a habeas court should "'not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Boutwell v. Bissonnette*, 66 F. Supp.2d 243, 245 (D. Mass. 1999), *quoting Coleman v. Thomspon*, 501 U.S. 722, 729 (1991). Such independent and adequate state grounds exist where, as here, "'the state court declined to hear [the underlying claim] because the prisoner failed to meet a state procedural requirement.'" *Simpson v. Matesanz*, 175 F.3d 200, 206 (1st Cir. 1999), *cert. denied*, 528 U.S. 1082 (2000), *quoting Brewer*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 522 U.S. 1151 (1998).

Massachusetts has a "long-standing rule that issues not raised at trial ... are treated as waived." *Commonwealth v. Curtis*, 417 Mass. 619, 632 N.E.2d 821, 827 (Mass. 1994). See Mass. R. Crim. P. 22. The First Circuit has repeatedly recognized that "Massachusetts has ... routinely enforced, [and] consistently applied [the] contemporaneous objection rule," which requires a party to object to a perceived trial error at the time the error occurs to

preserve the issue for appellate review. *See Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995) (collecting cases); *see also Brewer*, 119 F.3d at 1001 (describing Massachusetts' contemporaneous objection rule as "firmly entrenched"). Where, as here, a party fails to make a timely objection, appellate review under Massachusetts law is limited to determining whether the alleged error posed a substantial risk of a miscarriage of justice. *See Burks*, 55 F.3d at 716, n. 2; *Commonwealth v. Clements*, 51 Mass. App. Ct. 508, 524, 747 N.E.2d 682 (2001) (where defendant did not object to the judge's questioning the jury in his absence, review is limited to whether absence created a substantial risk of a miscarriage of justice).

The limited review undertaken pursuant to the Massachusetts "miscarriage of justice" standard does not operate as a waiver of the underlying procedural default. *Burks*, 55 F.3d at 716, n. 2. To the contrary, such review constitutes the "classic example of an independent and adequate state ground" supporting application of the procedural default rule. *Simpson*, 175 F.3d at 207. Habeas review, therefore, is precluded on this claim unless the petitioner "can demonstrate cause for default and prejudice stemming therefrom, or, alternatively, unless [he] can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." *Burks*, 55 F.3d at 716. No such showing can be made here.

In its decision, the Appeals Court noted that defense counsel did not object to the judge's answer to the jury questions at trial. *Commonwealth v. Clark*, 60 Mass. App. 119, 804 N.E.2d 961 (2004) (S.A. 4). Defense counsel also failed to object to the petitioner's absence at the conference regarding the jury's questions, despite being given an opportunity

9

to do so.[3] Although the petitioner may not have been informed of the conference at the time it occurred, he did not lodge any objections after the conference, nor did he make any post-trial motions based on his absence at the conference. *See United States v. Gagnon*, 470 U.S. 522, 528 (1985) (*per curiam*). The Supreme Court in *Gagnon* held that a defendant need not be expressly warned of his right to be present and that the failure to assert the right constituted an adequate waiver. *Id.* at 529. Therefore, despite the fact that the Appeals Court did not specifically note the petitioner's failure to object, the claim is procedurally defaulted.

"To excuse a procedural default, a petitioner's cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Burks*, 55 F.3d at 716-17. No such factor "external" to the defense existed here. There was, for instance, no governmental interference that prevented the petitioner from complying with the state procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

The only other potential cause available to the petitioner is alleged attorney error or oversight in failing to timely object. It is well settled, however, that attorney error or oversight is not sufficient cause for excusing a procedural default unless it rises to the level of constitutional ineffective assistance. *See id.; Burks*, 55 F.3d 712. No such claim of constitutional ineffective assistance of counsel has been presented here or to the state court.

---

[3] After the judge read the jury's questions, he asked defense counsel, "Now do you want me to bring your client down to tell him this in the courtroom, or do you want me to write them a note?" Defense counsel answered, "I don't mind if you write them a note. That's fine with me." (Tr. IV/16-17).

Nor can the petitioner demonstrate actual prejudice sufficient to excuse his default. *See Coleman*, 501 U.S. at 750. His unsupported claim that he "might have intervened or spurred his attorney to defend him more aggressively" is mere speculation and assumes that the petitioner would have had the legal knowledge to address the issue.

Absent cause and actual prejudice sufficient to excuse his procedural default, the only other avenue available to the petitioner – that a refusal to hear his defaulted state law claim would result in a "fundamental miscarriage of justice" – is foreclosed. *Simpson*, 175 F.3d at 210. This exception to the procedural default rule is "'seldom to be used, and explicitly tied to a showing of actual innocence.'" *Killela v. Hall*, 84 F. Supp.2d 204, 210 (D. Mass. 2000), *quoting Burks*, 55 F.3d at 717. No such showing has been or could be made here. Nor has the petitioner made a claim of actual innocence.

## II. THE APPEALS COURT'S HOLDING THAT THE PETITIONER'S ABSENCE DURING THE READING AND ANSWERING OF THE JURY QUESTION WAS HARMLESS ERROR WAS NOT AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT PRECEDENT.

Even if this court chooses to address the petitioner's claim despite its procedural default, it should find it meritless. The petitioner acknowledges that the Appeals Court correctly identified the governing legal principle and relies on the unreasonable application prong of § 2254, claiming that the Appeals Court "applied the law to the facts in an unreasonable manner in holding that the petitioner was not prejudiced and that 'the [petitioner's] presence would not have resulted in any different outcome'" (Pet. Br. at 7).

The Supreme Court has recognized that a defendant has a right to be present at all

critical stages of trial and that right is protected by the Due Process Clause in situations where the defendant is not actually confronting witnesses or evidence against him. *Gagnon v. United States*, 470 U.S. at 526. However, the right to be present is not absolute: it is triggered only when the defendant's "'presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Id., quoting Snyder v. Massachusetts*, 291 U.S. 97, 105-106, 108 (1934). Thus, there is no constitutional right to be present "when presence would be useless, or the benefit but a shadow." *Snyder* at 106-107. A violation of the right to be present at trial is also a constitutional error that is subject to harmless error analysis. *Rushen v. Spain*, 464 U.S. 114, 117, n.2 (1983).

In this context, the Appeals Court held that the petitioner was not prejudiced by the judge's failure to inform him of the jury's questions and to involve him in the discussion of the answer to be given to the jury. *Clark*, 60 Mass. App. Ct. 1119, 804 N.E.2d 961, (S.A. 4). The court based this holding on its conclusion that the "defendant's presence would not have resulted in any different outcome in the circumstances of this case." *Id*. This conclusion was supported by the fact that the petitioner's attorney was present when the judge read the jury questions and participated in the discussion about how the questions should be answered (S.A. 2: R.A. 15-18). Although the petitioner argues that had he been present during the discussion he may have urged his attorney to "defend him more aggressively" (Pet. Br. at 9),

this is mere speculation that the petitioner would have understood the ramifications of the questions and would have had any input. The judge was trying to determine how to respond to a jury question about the elements of the charge, which was largely a legal issue. The petitioner does not set forth how he would have assisted his counsel had he been present during this discussion.

The circumstances in this case can be contrasted to those in *Fisher v. Roe*, 263 F.3d 906, 915 (9th Cir. 2001), in which both petitioners and their counsel were not present when testimony was read back to the jury during deliberations. The Ninth Circuit held that petitioners were entitled to habeas corpus relief because if present at the readback, they could have made certain that testimony of defense witnesses was read and ensured that cross-examination of prosecution witnesses would be read in addition to direct testimony as well as making sure that the court reporter's notes were accurate and that she did not unduly emphasize any part of the requested testimony. *Id*.

As the Ninth Circuit noted, "it makes perfect sense to conclude that the presence of the defendant would be largely a matter of form when a defendant's lawyer is present at proceedings raising largely legal issues," *id*. at 916, which is what happened in the present case. Although the petitioner attempts to characterize the jury's first question as a factual one, the judge's answer properly informed the jury of their duty to find beyond a reasonable doubt that the petitioner was armed with a dangerous weapon at the time he entered the apartment (S.A. 2, R.A. 14). Moreover, the prosecutor attempted to point out that the jury's

13

question may have been a factual one and the judge disagreed (S.A. 2, R.A. 17). Therefore, the petitioner's concerns about the question were actually raised during the discussion with the judge. In light of this, the petitioner cannot show that his absence "thwarted a fair and just hearing." The Appeals Court's application of the harmless error standard was not objectively unreasonable and properly applied *Gagnon*, *supra*, and other Supreme Court precedent regarding a defendant's right to be present at trial. See *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) ("We may not grant respondent's habeas petition. . . if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an "objectively unreasonable" manner).

Even if this court finds that the Appeals Court's analysis was an unreasonable application of *Gagnon* or *Chapman v. California*, 386 U.S. 18 (1967) (harmless error analysis on direct review examines whether there is a reasonably possibility that the error may have contributed to the verdict), the Supreme Court has held that a less onerous standard of review should be applied to claims of constitutional error raised on habeas review. Under this standard, the petitioner is not entitled to habeas relief for the constitutional error unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Although the *Brecht* standard is more lenient toward the government than the beyond a reasonable doubt standard of *Chapman v. California*, 386 U. S. 18 (1967), it is the respondent's burden

to establish harmlessness under *Brecht. O'Neal v. McAninch*, 513 U. S. 432, 437-444 (1995). As discussed above, where the jury's question dealt with the legal issue of the elements of the crime charged, the petitioner's absence did not have such a substantial and injurious effect on the jury, especially where his counsel was present and where the judge's supplemental instruction in response to the jury correctly informed the jury of their obligation to find beyond a reasonable doubt that the petitioner was armed at the time he entered the victim's apartment.

**CONCLUSION**

For the reasons detailed herein, the state court's resolution of the petitioner's federal constitutional claim was not an unreasonable application of clearly established Supreme Court precedent. While this Court may disagree with the harmless error analysis of the petitioner's claim, it is not free under the constraints imposed by the AEDPA to substitute its own judgment for the reasonable judgment of the state court. *Williams v. Matesanz*, 230 F.3d at 429. As the First Circuit recently explained:

> When there are two plausible outcomes that can result for a reasoned application of clearly established Supreme Court precedent to a particular set of facts, the state court's choice between those two outcomes, whether right or wrong, cannot constitute a basis for habeas relief under [the AEDPA].

*Id.* The Petition for a Writ of Habeas Corpus should accordingly be denied.

    Respectfully submitted,

    THOMAS F. REILLY
    ATTORNEY GENERAL

    /s/ Susanne G. Reardon
    Susanne G. Reardon
    Assistant Attorney General
    Criminal Bureau
    One Ashburton Place
    Boston, Massachusetts 02108
    (617) 727-2200 ext. 2832
    BBO No. 561669

Dated: March 11, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the petitioner's counsel, at the address below on March 11, 2005, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, to her as follows:

Stella Robinson, Esq.
405 Waltham Street, No. 179
Lexington, MA 02421

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General