UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
RONALD CLARK,                    )
        Petitioner,             )
                                )        CIVIL ACTION NO.
        v.                      )        05-10148-DPW
                                )
LOIS RUSSO,                     )
        Respondent.             )
```

MEMORANDUM AND ORDER
August 31, 2005

Pursuant to 28 U.S.C. § 2254, Petitioner Ronald Clark seeks habeas corpus relief from his state court convictions for armed home invasion, assault by means of a dangerous weapon, and rape. Petitioner asserts only the following two grounds for relief in this proceeding: (1) that he was deprived of his right to be present during all critical stages of trial when the trial judge answered a "factual question" from the deliberating jury outside his presence; and (2) that the judge's response to the question was in error because it "could have been construed as a factual answer," thereby unconstitutionally displacing the jury's role. Respondent contends that the grounds advanced by Petitioner are procedurally defaulted or, alternatively, that the adjudication of his claims by the state appellate court was neither contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court.

## I. BACKGROUND

A.    Facts

When considering habeas corpus petitions made pursuant to 28 U.S.C. § 2254(e)(1), findings of fact by the state court "shall be presumed to be correct" and the applicant for habeas relief "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.; see Epsom v. Hall, 350 F.3d 49, 52 (1st Cir. 2003); McCambridge v. Hall, 303 F.3d 24, 34-35 (1st Cir. 2002). Drawing from the trial transcript, as cited by the parties in their written briefs, I summarize the evidence adduced at trial that is relevant to the present proceedings.

The complainant victim ("Complainant") and Petitioner lived together in Complainant's apartment for approximately nine months in 1999. Complainant testified that during this period Petitioner became "controlling," "possessive," prevented her from seeing her friends, and spent all of his time -- aside from the hours he was working -- with her. Complainant determined to end the relationship and asked Petitioner to move out of the apartment in late 1999. Petitioner resisted and, even after he moved out, continued to call Complainant every day, as well as to stop by her apartment sporadically.

Complainant testified that Petitioner called her on the evening of February 3, 2000 to discuss a spare key to her apartment he still possessed. According to Complainant, Petitioner said he would only return the key if she would meet with him, which she refused to do. Later that evening, when

-2-

Complainant was already asleep or falling asleep in bed with her
two year old son, she heard her apartment door open and close.
Shortly thereafter, Petitioner entered Complainant's bedroom,
commanded her to wake up, and proceeded to sexually assault her.
Several times Complainant told Petitioner to leave or else she
would call the police.  Petitioner became enraged, pulled a knife
from behind his back, pointed it at Complainant's face, and
threatened to kill her in front of her son if she refused his
order to go into the kitchen.  Petitioner then forced Complainant
into the kitchen -- threatening, as he did, to kill her, her son,
and himself -- pushed her against a wall, and started choking
her, which caused her to lose consciousness briefly.

    Complainant's son, who had awoken during the commotion, came
into the kitchen in an agitated state.  Petitioner took the child
to his bedroom and then returned to the kitchen, where
Complainant had remained.  Complainant, who feared for her son's
life as well as her own, attempted to calm Petitioner down.
While in the kitchen, Complainant observed that the phone had
been ripped from the wall.  When Petitioner demanded that
Complainant "prove to me that you didn't sleep with anyone," she
understood him to be demanding sex.  Petitioner undressed
Complainant and they took a shower together.  Afterwards,
Petitioner raped Complainant.

    Complainant testified that she felt that she had no choice
but to comply with Petitioner's demands and did not act
voluntarily.  Complainant further testified that her sense of

compulsion stemmed from her belief -- based on Petitioner having previously told her that he had killed a man in California as part of his initiation into Hell's Angels -- that Petitioner was capable of killing her and her son.

The next morning, after Petitioner had left the apartment, Complainant went downstairs to a friend's apartment and reported the attack.  Eventually, the police were summoned and, after speaking with them, Complainant was transported by ambulance to the hospital.

**B.    Procedural History**

In October 2001, Petitioner was tried before a jury, with Judge Charles T. Spurlock presiding, in the Massachusetts Superior Court for Suffolk County.  During the course of its deliberations, the jury sent two questions to the judge.[1]  In response, and following consultation with counsel[2] -- but

---

[1]The message from the jury, which was signed by the jury foreperson, read as follows:

> Re: Home Invasion
> Question
>     beyond a reasonable doubt: was the defendant armed with a dangerous weapon at the time of entry?
> 1. Where was the roast beef dinner held?
> (Ms. [name of Complainant redacted] testimony)

[Supplemental Appendix ("S.A.") 2; Record Appendix on Appeal ("R.") 14 (emphasis in original).]

[2]After Judge Spurlock called counsel to sidebar and read the jury questions set forth supra, the following colloquy occurred:

> THE COURT: The first one is you do have to prove beyond a reasonable doubt he was armed at the time of entry with a dangerous weapon.  The second one, that's testimony.  That's their province.  I can't tell them about the testimony.

-4-

They've got to figure that out for themselves.  Now, do you want me to bring your client down to tell him this in the courtroom or do you want me to write them a note?

DEFENSE COUNSEL: I don't mind if you write them a note. That's fine with me.

THE COURT: Let me have a pen, because I'll write it right on the back --

PROSECUTOR: Can I just take a look, Judge?  I'm just curious about --

THE COURT: You're curious about what?

PROSECUTOR: Anything about their writing.

THE COURT: Why?  Do you think you're going to discern something from the way the wrote it?

PROSECUTOR: I don't know.  You never know, you know?

THE COURT: You're a handwriting expert now?

PROSECUTOR: You never know.

THE COURT: You'd better go to Washington.  They might need you down there.

PROSECUTOR: Judge, it looks like -- on Question 1, was the defendant armed with a dangerous weapon at the time of entry.  It looks like they're just, flat out, asking you the question.

THE COURT: Well, I can't answer that.

PROSECUTOR: Right.  So rather than --

THE COURT: No.  Beyond a reasonable doubt he was.

PROSECUTOR: Right.  How about just saying to them, you know, these are factual questions that are up to them.  That's what they're here for.

THE COURT: I'm not going to say it that way.  The Commonwealth must prove beyond a reasonable doubt that the defendant was armed with a dangerous weapon at the time he entered the apartment.

without having Petitioner in the courtroom or even informing him of the questions -- the judge issued supplemental instructions to the jury.[3]  On October 25, 2001, the jury returned a guilty verdict against Petitioner on all counts.  The following day, Judge Spurlock sentenced Petitioner to: (1) twenty years to twenty years and one day on the armed home invasion conviction; (2) fifteen to twenty years on the rape conviction, which was to run concurrently with the armed home invasion sentence; and (3) three years probation on the assault with a dangerous weapon conviction.

In the course of appealing his conviction, Petitioner raised the following three claims: (1) in responding to the jury question, the trial judge committed prejudicial error by

---

[. . .]

THE COURT: Anyway, the answer is, yes, the Commonwealth must prove beyond a reasonable doubt that the defendant was armed with a dangerous weapon at the time he entered the apartment; and, two, resolving issues regarding the testimony is exclusively your responsibility.

PROSECUTION: That's fine with the Commonwealth.  Thank you, Your Honor.

DEFENSE COUNSEL: I'm in agreement with that.

[S.A. 2; R. 15-18.]

[3]The signed response from Judge Spurlock stated:

1. YES, The Commonwealth must prove beyond a reasonable doubt that the defendant was armed with a dangerous weapon at the time he entered the apt.
2. Resolving issues regarding the testimony is exclusively your responsibility.

[Id.]

answering the question without Petitioner present and also
confused the jury with the substance of his answer; (2) a
substantial risk of miscarriage of justice occurred when the only
evidence tending to establish that Petitioner was armed when he
entered the apartment was unreliable and improper hearsay; and
(3) the trial judge improperly admitted fresh complaint evidence,
self-corroborating testimony by the complainant, and highly
prejudicial and irrelevant evidence regarding prior bad acts by
Petitioner. [Supplemental Appendix ("S.A.") 1.]  On March 1,
2004, the Massachusetts Appeals Court ("MAC") affirmed the
conviction in an unpublished opinion issued pursuant to its Rule
1:28.  Commonwealth v. Clark, 60 Mass. App. Ct. 1119 (2004).

    Thereafter, Petitioner timely sought further appellate
review from the Massachusetts Supreme Judicial Court ("SJC")
alleging that: (1) the holding by the MAC that there was no error
in the trial judge's supplemental instruction "failed to address
the very significant risk that the jury would have understood the
judge's response as an instruction that an essential element of
home invasion had been proven"; (2) in holding that the
Petitioner's absence during the reading and answering of the jury
question was harmless error the MAC misapplied relevant case law
and made a ruling contrary to SJC precedent; and (3) the MAC
applied the wrong standard of proof for a case in which
"inadmissible evidence provides the sole proof of an essential
element." [S.A. 5.]  The SJC denied further appellate review via
an order dated May 3, 2004.

Having thereby exhausted his remedies in state court, Petitioner filed a timely habeas petition with this court on January 25, 2005.

## II. DISCUSSION

As noted above, Petitioner has narrowed his attack on his conviction by focusing upon two related claims in this habeas petition.  First, Petitioner contends that he was deprived of his right to be present during all critical stages of trial when the trial judge answered a question from the deliberating jury outside of his presence.  Second, Petitioner argues that because the court's response to the question "failed to unambiguously inform the jury that it could not instruct on the facts" and "could have been construed as a factual answer."  Petitioner alleges that in passing upon the aforementioned claims, the MAC correctly identified the governing legal principle -- namely that a defendant in a criminal case has a right to be present during all critical stages of his trial -- but unreasonably applied the law to the facts of the case.

Respondent contends that because Petitioner failed to lodge a contemporaneous objection during trial, the claims are in procedural default and, therefore, foreclosed from review.  In the alternative, Respondent argues that the underlying state court decision cannot be disturbed because it was neither contrary to, nor an unreasonable application of federal law as determined by the Supreme Court.

## A.    Standard of Review

-8-

This petition for habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and, therefore, review of the petition is governed by the AEDPA.  See, e.g., Medina v. Matesanz, 298 F.3d 98, 100 (1st Cir. 2002); Lindh v. Murphy, 521 U.S. 320, 336 (1997).  AEDPA mandates that a federal court not grant a writ of habeas corpus based on a claim that was "adjudicated on the merits" in a state court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Under the AEDPA, therefore, a necessary predicate to granting habeas corpus relief for a state court decision that was "contrary to" or an "unreasonable application of" Supreme Court precedent is that the claim for which relief is sought was "adjudicated on the merits" by the state court.  28 U.S.C. § 2254(d).  Where, instead, a state court has declined to address a prisoner's federal law claim because the prisoner failed to meet a state law procedural requirement, the state court decision is said to rest on "independent and adequate state procedural grounds."  In these circumstances, because of "concerns of comity and federalism," federal habeas review generally is precluded. Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is

independent of the federal question and adequate to support the judgment.  This rule applies whether the state law ground is substantive or procedural.").  The Supreme Court articulated those limited circumstances in which federal habeas review is permitted even though the underlying state court decision rests on "independent and adequate" state law grounds:

> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.

## B. Procedural Default

Respondent contends that the grounds underlying Petitioner's habeas petition are procedurally defaulted and foreclosed from further review.  For the reasons set forth below, I find that Petitioner did procedurally default on the claims by failing to lodge contemporaneous objections as to both claims but that the state court waived the default as to the right to be present claim.

### 1. Procedurally Defaulted Instruction Claim; No Waiver

The ruling by a state court that a defendant has procedurally defaulted on a claim by failing to object at trial can constitute an "independent and adequate" state law ground "sufficient to trigger the bar [to habeas review] rule so long as the state has a consistently applied a contemporaneous objection

requirement and the state court has not waived it in the
particular case by resting its decision on some other ground."
Moore v. Ponte, 186 F.3d 26, 31-32 (1st Cir. 1999) (quoting Burks
v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995)).  Massachusetts
courts have consistently enforced the contemporaneous objection
rule[4] such that when a defendant fails to object at trial to
alleged errors, the claim of error is not preserved for full
appellate review and is considered by the reviewing court only to
determine whether any error "created a substantial likelihood
that a miscarriage of justice has occurred."  Commonwealth v.
Wright, 411 Mass. 678, 681 (1992).

Here, the MAC commenced its discussion of Petitioner's claim
regarding the content of the judge's answer to the jury question
by noting Petitioner's failure to object at trial.  Slip op. at
1.  In support of its analysis, the MAC cited Commonwealth v.
Spencer, 40 Mass. App. Ct. 919 (1996), a decision in which the
court had occasion to consider an appeal based, in part, on the
claim that the trial judge had answered a question from the
deliberating jury incorrectly.  The Spencer court noted that
because the defendant had not objected at trial, the court would
"appraise the error (if any) by the miscarriage of justice

---

[4]See Mass. R. Crim. P. 22 (general contemporaneous objection
rule); Mass. R. Crim. P. 24(b) (contemporaneous objection rule
regarding jury instructions) ("No party may assign as error the
giving or the failure to give an instruction unless he objects
thereto before the jury retires to consider its verdict,
specifying the matter to which he objects and the grounds for the
objection.").

standard." <u>Spencer</u>, 40 Mass. App. Ct. at 919.  In <u>Spencer</u>, the
MAC determined that because the judge had misinformed the jury
regarding an element of the offense charged in his answer,
"[t]hat answer created a substantial risk of a miscarriage of
justice," leading the court to reverse the conviction.  <u>Id.</u>

When considering Petitioner's case, the MAC apparently
undertook a similar miscarriage of justice analysis, albeit more
elliptically.  After noting the failure of Petitioner to enter a
contemporaneous objection, and citing <u>Spencer</u> for the analytical
framework applicable under the circumstances (<u>i.e.</u>, assessing the
content of the trial judge's response by the miscarriage of
justice standard), the court held: "There was no error in the
content of the supplemental instruction.  We presume, absent
evidence to the contrary, that the jury followed the judge's
instructions."  Slip op. at 2.

Petitioner contends that the decision by the MAC on this
claim "does not seem to be based on waiver; the state court held,
rather, that there was no error because the content of the
instruction was a correct statement of the law."  Furthermore,
Petitioner argues that even though the MAC thereby rendered "a
decision on the merits as the court saw them," it had failed to
address the issue raised on appeal, namely, that the jury had
"asked for an instruction on the facts, not the law," and
therefore the judge's response was likely misleading.  Both of
these arguments, which I address in turn, are unavailing.

The application of the miscarriage of justice standard is

-12-

implicit in the decision by the MAC.  The court opened its
analysis by noting the failure of Petitioner to comply with the
contemporaneous objection requirement.  This language was not
mere surplusage; instead, it provided the context in which the
claim would be considered.  The court went on to cite one of its
own cases in which it had considered a claim similar to
Petitioner's and, because the claim -- like Petitioner's -- was
in procedural default for failure to object contemporaneously,
employed the miscarriage of justice standard.[5]  To determine
whether there was a substantial risk of a miscarriage of justice,
it was necessary for the court to consider the content of the
judge's response to the jury question.  After all, providing the
jury with an incorrect statement of law material to the

---

[5]A different analysis might have obtained in the present
action if the prosecutor had followed his discussion with the
judge about the nature of the question -- which he contended was
a factual inquiry, but the judge read as a request for
instruction on a point of law -- with an objection to the
supplemental instruction the judge provided the jury in response.
In Commonwealth v. Claudio, 418 Mass. 103 (1994), the SJC treated
an objection regarding jury instructions to be preserved for
appeal where the prosecutor, but not the defense counsel, had
raised an objection to it at trial.  Id. at 111 n.6.  As the
court explained:

> a request from a prosecutor for an additional instruction
> favorable to the defendant is unusual. The prosecutor's
> objection concisely informed the judge of a significant
> omission from the charge on a point which had formed an
> important part of the prosecutor's closing argument. Once
> the prosecutor's request had been denied, the defendant's
> counsel may have thought he would have no better success.

Id.  In the present case, however, neither the prosecutor nor
defense counsel objected to the supplemental instructions.
Accordingly, the MAC properly found Petitioner's claim regarding
the content of the instructions to be procedurally defaulted.

-13-

deliberations -- as the Spencer court found had occurred -- or improperly usurping the jury's fact-finding role -- as Petitioner alleges happened here -- could pose a substantial risk of a miscarriage justice.  By examining the contents of the answer for error the MAC did not thereby waive the procedural default but, instead, undertook the customary miscarriage of justice analysis. Having found no error in the content of the answer and appropriately operating with the presumption that the jury followed the non-erroneous instructions from the judge, see Commonwealth v. Britto, 433 Mass. 596, 612 (2001), the MAC did not grant Petitioner relief on this claim.

The limited "miscarriage of justice" review of Petitioner's claims regarding the answer to the jury question undertaken by the MAC does not constitute a waiver by the state court of the procedural default grounds.  See Horton, 370 F.3d 75, 81 (1st Cir. 2004).  Accordingly, Petitioner is entitled to federal habeas review of this claim only if he satisfies the "cause and prejudice" standard discussed infra.

2. Procedurally Defaulted Right to be Present Claim; Waiver

I turn now to the second aspect of Petitioner's request for relief -- the contention that harmful error arose from his not being present during the reading and answering of the jury's questions -- which was squarely addressed on the merits by the MAC.  Slip Op. at 2.

Incontrovertibly, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes

-14-

any bar to federal court review that might otherwise have been available." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). Federal habeas review still might be impermissible, however, if the state court based its assessment of the merits only on state law. See Phoenix v. Matesanz, 189 F.3d 20, 26 (1st Cir. 1999). Here, Petitioner explicitly grounded his claim on both federal and state constitutional law and in assessing the claim, the MAC cited case law drawing upon both bodies of law. Furthermore, and in contrast to its discussion regarding the substance of the judge's answer to the jury question, the MAC made no mention of the failure by Petitioner to make a contemporaneous objection to his exclusion from the proceedings. I find, therefore, that the claim was adjudicated on the merits by the highest state court to examine it and, as a result, that the procedural default was waived. Accordingly, the claim must now be reviewed under the "contrary to" and "unreasonable application of" standard, rather than the "cause and prejudice"/actual innocence standard applicable to Petitioner's procedurally defaulted claim.

3. Review for "Cause and Prejudice" as to the Instruction Claim

As explained in Part II.A.1. supra, the decision by the MAC on Petitioner's claim regarding the content of the answer to the jury question rested on an "independent and adequate" state law ground. Petitioner is consequently entitled to federal habeas review of the claim only if he demonstrates either (a) "cause and prejudice" with respect to his procedural default or (b) actual innocence, a contention he does not advance. See Simpson v.

<u>Matesanz</u>, 175 F.3d 200, 203 (1st Cir. 1999) (where state court had denied review based on procedural waiver, reversing grant of habeas relief because petitioner had "not excused his default by showing cause and prejudice for his waiver or by establishing his actual innocence").

To demonstrate the requisite cause, Petitioner must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule." <u>Carrier</u>, 477 U.S. at 488; <u>see</u> <u>Horton</u> 370 F.3d at 81; <u>Gunter v. Maloney</u>, 291 F.3d 74, 81 (1st Cir. 2002). "[W]ithout attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule," the <u>Carrier</u> court noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under the standard." <u>Carrier</u>, 477 U.S. at 488 (internal quotations and citations omitted). Ineffective assistance of counsel might also constitute cause for procedural default, but only if the ineffectiveness itself reached the level of "an independent constitutional violation." <u>Coleman</u>, 501 U.S. at 755; <u>see</u> <u>Carrier</u>, 477 U.S. at 488; <u>Gunter</u>, 291 F.3d at 81; <u>Burks</u>, 55 F.3d at 717 (holding that "[m]ere attorney error, not amounting to ineffective assistance in a constitutionally significant sense, is insufficient to constitute cause") (internal citations omitted). Thus, before there can be federal habeas review of his procedurally defaulted claim, Petitioner must satisfy his burden

of "demonstrat[ing] cause for the default and actual prejudice as
a result of the alleged violation of federal law." Coleman, 501
U.S. at 750; see Burks, 55 F.3d at 716 (holding that "a state
court decision resting upon a finding of procedural default . . .
forecloses federal habeas review unless the petitioner can
demonstrate cause for the default and prejudice stemming
therefrom").

In attempting to show cause for the procedural default,
Petitioner does not contend -- and there does not appear to be
any support in the record for the argument -- that interference
by the government made compliance with the contemporaneous
objection rule impossible.  Nor does Petitioner argue that his
trial counsel was so ineffective that her conduct gave rise to an
independent constitutional violation.  Instead, Petitioner points
out that his trial counsel "declined the trial judge's offer to
bring the petitioner into the courtroom" and "[i]n so doing, she
purported to waive the petitioner's right to be present, an act
she had no right to perform."  Petitioner goes on to contend that
the procedural default at issue "arose from the lack of an
objection to trial counsel's unilateral waiver of the
petitioner's right to be present."  Having thereby recast the
issue as the failure to object to a prior, erroneous failure to
object -- i.e., trial counsel purporting to waive Petitioner's
right to be present, rather than objecting to proceeding in his
absence -- Petitioner argues that he was "the only person
realistically in a position to object" and the fact that he was,

"through no fault of his own, unaware of the proceedings" constituted "an objective factor external to the petitioner ma[king] it impossible for him to raise an objection."

Petitioner's argument, while superficially alluring, is unavailing. First, Petitioner's absence from the courtroom during the discussion of and judge's response to the jury question did not itself constitute an "objective factor external to the defense [that] impeded counsel's efforts to comply with the state procedural rule." Carrier, 477 U.S. at 488. Petitioner was represented by counsel during the relevant proceedings and was not himself present precisely because his counsel declined an offer from the judge to have Petitioner brought to the courtroom. Trial counsel's conduct in this regard cannot be said to be "some objective factor external to the defense [that] impeded counsel's efforts to comply with the state procedural rule," so as to establish the requisite cause for the procedural default. Carrier, 477 U.S. at 488 (emphasis supplied).

Petitioner might have proceeded on the theory that his trial counsel was so ineffective that her conduct gave rise to "an independent constitutional violation," Coleman, 501 U.S. at 755, thereby supplying sufficient cause for the default, but he elected not to do so either here or in state court.[6] Nor do I

---

[6]Petitioner argued that the purported waiver by trial counsel of his right to be present in the courtroom "violated constitutional principles," but has never explicitly raised an ineffective assistance of counsel claim.

find such ineffectiveness with respect to the claim that is now under consideration, _i.e._, the substance of the response to the jury question.  If I were to reach the instruction claim on the merits, I would find, as the MAC found in its miscarriage of justice analysis, that the content of the response contained no error.  In responding to the question, the trial court properly instructed the jury that the Commonwealth needed to prove beyond a reasonable doubt the element of the offense about which the jury had inquired.  Accordingly, the decision by trial counsel not to object to the judge's response cannot fairly be characterized as constitutional ineffective assistance of counsel.  I find that Petitioner has failed, therefore, to demonstrate cause for the procedural default.

Even were Petitioner able to establish sufficient cause for the procedural default, however, his claim still would not meet with success.  Petitioner argues there was actual prejudice because had he been present in court, he "might have intervened or spurred his attorney to defend him more aggressively" and that "[i]f, by being present, the petitioner had had an opportunity to prevent the jury from receiving a defective instruction, the outcome of the trial might have been different."

Two factors doom this argument.  First, the prosecutor advanced the contention Petitioner now relies upon with regard to nature of the inquiry from the deliberating jury -- _i.e._, that the jury was asking a factual question regarding whether Petitioner had been armed at the time he entered Complainant's

apartment.  The judge, however, read the question as an inquiry
about the legal elements of the armed home invasion charge and
crafted his response -- to which neither the prosecutor nor the
defense attorney thereafter objected -- accordingly.
Petitioner's mere speculation that had he been present in court
he would more successfully have advanced, either through counsel
or himself, what was, in essence, the same argument made and
abandoned by the prosecutor, does not constitute a showing of
prejudice.

Furthermore, and more importantly, the supplemental
instruction the judge provided was not defective and, thus, in no
way prejudiced Petitioner.  The judge clearly instructed the jury
that the Commonwealth must establish beyond a reasonable doubt
that Petitioner was armed with a dangerous weapon at the time he
entered the apartment -- an essential element of the armed home
invasion charge.  Petitioner's contention that the "outcome of
the trial might have been different" had he been afforded the
opportunity "to prevent the jury from receiving a defective
instruction" collapses once it is established that the
instruction was not, in fact, defective.

## C. Merits of Right to be Present Claim

In reviewing the holding by the MAC that Petitioner suffered
no prejudice on account of the error committed by the trial court
in not securing his right to be present while responses were made
to the jury's inquiries, the determinative question is whether
the decision was "contrary to" or "an unreasonable application

of" Supreme Court precedent.

The Supreme Court has set forth two routes by which a state court decision could be "contrary to" its precedent within the meaning of the AEDPA.  See <u>Williams v. Taylor</u>, 529 U.S. 362, 406-07 (2000).  First, if a state court "applies a rule that contradicts the governing law set forth in our cases," the resulting decision is "contrary to" Supreme Court precedent.  <u>Id.</u> at 405.  Second, if a state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent," it thereby renders a decision "contrary to" Supreme Court precedent under the AEDPA.  <u>Id.</u> at 406.

By contrast, a state court decision is an "unreasonable application of" of Supreme Court precedent when:

> the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case . . . [or] the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extent that principle to a new context where it should apply.

<u>Id.</u> at 407.  It is not sufficient that the reviewing court simply disagrees with the decision of the state court; instead, "[t]o be an unreasonable application of governing law, the state court's determination must not only be incorrect but also be objectively unreasonable.  In other words, if the petition presents a close call, it must be rejected, even if the state court was wrong." <u>Horton v. Allen</u>, 370 F.3d 75, 80 (1st Cir. 2004) (internal citations omitted); <u>see</u> <u>Taylor</u>, 529 U.S. at 411 ("[A] federal

court may not issue the writ simply because the court concludes
in its independent judgment that the relevant state-court
decision applied clearly established federal law erroneously or
incorrectly.  Rather, that application must also be
unreasonable.").

1. Applicable Standard of Review

        Petitioner contends, and Respondent does not dispute, that a
defendant has a constitutional right to be present in the
courtroom during all critical stages of his trial.  See, e.g.,
Snyder v. Massachusetts, 291 U.S. 97, 107-08 (1934) (ruling that
"[s]o far as the Fourteenth Amendment is concerned, the presence
of a defendant is a condition of due process to the extent that a
fair and just hearing would be thwarted by his absence, and to
that extent only"); Kentucky v. Stincer, 482 U.S. 730, 745 (1987)
(holding that "a defendant is guaranteed the right to be present
at any stage of the criminal proceeding that is critical to its
outcome if his presence would contribute to the fairness of the
procedure") (internal citations omitted); see also Commonwealth
v. Owens, 414 Mass. 595, 602 (1993) (stating that "[i]t is clear
that a defendant is entitled to be present at all critical stages
of a criminal proceeding from arraignment to sentence" and citing
state and federal case law in support thereof).

        It is well settled that on direct review the violation of a
defendant's constitutional right to be present is subject to a
robust harmless error analysis pursuant to which "before a
federal constitutional error can be held harmless, the court must

-22-

be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967); see also Medina, 298 F.3d at 101 (holding that "[a] court on direct appeal confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyond a reasonable doubt) (internal quotation marks and citations omitted); Owens, 414 Mass. at 603 (citing Chapman for the proposition that "[e]xclusion of the defendant from communications between the judge and the jury may not mandate a new trial if it is shown that the error is 'harmless beyond a reasonable doubt'" and noting that the SJC has "utilized a similar approach in deciding whether constitutional violations require reversal"). In applying the Chapman harmless error analysis, "[t]he existence of some reasonable possibility that error of constitutional dimension influenced the jury in reaching a verdict -- a reasonable possibility as opposed to one that is fanciful, chimerical, or merely speculative -- demands that a conviction be vacated." United States v. Argentine, 814 F.2d 783, 789 (1st Cir. 1987).

The First Circuit took the position in Medina that "the 'less exacting' harmless error standard under [Brecht v. Abrahamson, 507 U.S. 619 (1993)], governs our review on habeas. A federal habeas court . . . is bound to uphold a state court judgment, notwithstanding a preserved constitutional error, as long as the error did not have 'a substantial, injurious effect on the jury's verdict.'" Medina, 298 F.3d at 101 (quoting Sanna

v. Dipaolo, 265 F.3d 1, 14 (1st Cir. 2001)) (internal citations omitted).

I recognize, however, that relying upon a 2003 per curiam opinion by the Supreme Court, Mitchell v. Esparza, 540 U.S. 12 (2003), the Second Circuit recently held that "when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied Chapman." Gutierrez v. McGinnis, 389 F.3d 300, 306 (2nd Cir. 2004). The Supreme Court in Mitchell, after determining that the underlying decision by the Ohio Court of Appeals was not "contrary to" clearly established federal law, turned to the "unreasonable application" prong of the habeas analysis, noting that "[a] constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Mitchell, 540 U.S. 17-18 (internal quotation marks and citations omitted).

The Second Circuit in Gutierrez concluded that in Mitchell "the Supreme Court implicitly rejected Brecht as the proper lense for examining the harmlessness of constitutional errors on collateral review, at least when the state explicitly adjudicated a federal claim on harmless error grounds." Gutierrez, 389 F.3d at 306. Accordingly, the court proceeded to assess whether the state appellate court had unreasonably applied Chapman in its harmless error analysis and, finding that it had not, affirmed the denial of habeas relief. Gutierrez, 389 F.3d at 309.

I note this recent development in the case law -- one on

which the First Circuit has not yet spoken -- but find that it is
not material for purposes of the present analysis.  As will
appear below, even under the stricter Chapman standard, the
determination by the MAC that the error related to Petitioner's
right to be present was harmless was not "objectively
unreasonable."

2. Collateral Review

Turning to consideration of the decision by the MAC that
Petitioner was not prejudiced by the failure of the trial judge
to inform him of the jury's questions, the operative inquiry is
not whether the MAC was correct in finding that the
constitutional error was harmless, but rather whether its
application of harmless error analysis to Petitioner's claim was
performed "in an objectively unreasonable manner."  Mitchell, 540
U.S. at 18.  I find no such unreasonableness.

As a preliminary matter, the two state court decisions cited
by the MAC in support of its ruling on this claim, Commonwealth
v. Caldwell, 45 Mass. App. Ct. 42 (1998) and Commonwealth v.
DeJesus, 44 Mass. App. Ct. 349 (1998), each applied -- either
explicitly or by reference -- Chapman's "beyond a reasonable
doubt" harmless error analysis to the constitutional errors at
issue.  In Caldwell, the trial judge conducted a voir dire
hearing regarding alleged misconduct by one of the deliberating
jurors during which defense counsel, but not the defendant, was
present, and after which the juror in question was dismissed for
cause.  Caldwell, 45 Mass. App. Ct. at 43-44.  As in the present

action, defense counsel had unilaterally waived his client's right to be present at the hearing, and the judge failed to ensure that the defendant himself had made an effective waiver. Id. at 44-45.  The MAC held that it was error for the trial court to conduct the voir dire without having the defendant present in the courtroom or ensuring that he had made a "voluntary, knowing and intelligent waiver of his right to be present."  Id. at 46. Nevertheless, "[e]ven though any violation of a constitutional right gives rise to presumptive prejudice, where the Commonwealth can make an affirmative showing that the error was harmless beyond a reasonable doubt, reversal of the conviction is not required."  Id.  Finding that the record evidence supported the judge's decision to dismiss the juror, the court concluded that "the error in excluding the defendant from the voir dire was harmless beyond a reasonable doubt."  Id. at 48.

Similarly in DeJesus, where the trial judge failed to inform the defendant or counsel for either side of a question from the deliberating jury, which he answered on his own, the MAC concluded that "the defendant was not prejudiced by his failure to do so."  DeJesus, 44 Mass. App. Ct. at 350-51.  There was no allegation that the substance of the response contained error,[7] but the defendant argued on appeal that had he been informed of the question, he would have requested that the jury be re-

---

[7]In response to the jury question "Did the defendants plead not guilty to all three indictments?", the judge answered "Yes." Commonwealth v. DeJesus, 44 Mass. App. Ct. 349, 350 n.1 (1998).

instructed on the burden of proof and the presumption of
innocence.  The trial court had already instructed the jury on
the burden and presumption, and "a judge, in responding to a
question from the jury, need not go beyond the scope of the
jury's question and instruct on other matters." Id. at 351.
Because the defendant was not entitled to the relief he claimed
he would have requested had he been informed of the jury's
inquiry, the MAC concluded that the constitutional error did not
require reversal.  Id.

So too here.  The MAC explained its determination that no
prejudice flowed to Petitioner from the constitutional error by
stating that "[t]he defendant's presence would not have resulted
in any different outcome in the circumstances of this case."
Clark, 60 Mass. App. Ct. 1119.  As in DeJesus, even if Petitioner
had been present during the reading and answering of the jury
question, the actions he claims he might have taken -- i.e.,
"interven[ing] or spurr[ing] his attorney to defend him more
aggressively" -- would have had no impact on the outcome of the
case.[8]  The argument Petitioner presses regarding the alleged

_____

[8]Petitioner contends that he need not "prove that his
presence would have made a difference in the outcome of his
trial.  He need only show a potential for prejudice."  In support
of this proposition, he relies on a concurring opinion by Justice
Stevens in Rushen v. Spain, 464 U.S. 114 (1983), as well as a
Tenth Circuit decision, Larson v. Tansy, 911 F.2d 392, 396 (10th
Cir. 1990).
    In a footnote to his concurrence in Rushen, Justice Stevens
observed that "we have viewed a potential for prejudice as a
necessary element of a violation of the right to be present."
Rushen, 464 U.S. at 129 n.8.  The Larson court determined that
the error in excluding the defendant from the courtroom during

defect in the judge's response -- namely, that the jury had posed a factual question, and, it could be supposed, likely understood the response "as a factual instruction" that Petitioner was armed at the time he entered Complainant's apartment -- had already been advanced by the prosecutor during the hearing.  From the judge's exchange with the prosecutor, it seems clear that he would have been no more persuaded by the point had it also been made by Petitioner or his counsel.

More to the point, however, is that the judge's answer contained no error -- it was a clear statement regarding the burden of proof on an element of one of the charged offenses and cannot fairly be read as an improper "factual instruction."

The analysis by the MAC was fully consistent with the underlying reasoning in "right to be present" cases, which frame the right in terms of how the defendant's presence might impact the fairness of the proceedings.  See, e.g., Snyder, 291 U.S. at 107-08 ("the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be

---

jury instructions, closing arguments, and the rendition of the verdict was not harmless because "[t]here is a reasonable possibility of prejudice to defendant in that his absence precluded him from providing any assistance to his attorney and from exerting any psychological influence on the jury."  Larson, 911 F.2d at 396.

Petitioner is correct that the burden is not on him to prove that his presence in the courtroom would have impacted the outcome of the trial.  If, however, the Commonwealth shows beyond a reasonable doubt that his absence did not, in fact, create a reasonable possibility of prejudice -- a showing it has made here -- the constitutional violation complained of does not require reversal.  See, e.g., Chapman v. California, 386 U.S. 18, 24 (1967); Commonwealth v. Owens, 414 Mass. 595, 603-04 (1993).

thwarted by his absence, and to that extent only"); <u>Kentucky v. Stincer</u>, 482 U.S. 730, 747 n.21 (1987) (noting that where a defendant "simply has failed to establish that his presence at the competency hearing would have contributed to the fairness of the proceeding" he "thus fails to establish, as an initial matter, the presence of a constitutional deprivation"); <u>see</u> <u>also</u> <u>United States v. Latham</u>, 874 F.2d 852, 856 (1st Cir. 1989).

The determination by the MAC that Petitioner suffered no prejudice as a consequence of the violation of his constitutional right to be present was not an "unreasonable application" of federal law.  The MAC undertook stringent harmless error analysis and reasonably applied the law to the facts of the case.

### III. CONCLUSION

For the reasons set forth more fully above, I DENY the petition for a writ of habeas corpus and direct the clerk to DISMISS this case.

/s/ Douglas P. Woodlock
_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE